TRI-PACIFIC COMMERCIAL BROKERAGE, INC., Appellant, v. VOSS BORETA, an Individual; and ST. ANDREWS GOLF CORPORATION, a Nevada Corporation dba LAS VEGAS DISCOUNT GOLF AND TENNIS, Respondents.

No. 27092

January 30, 1997                                   931 P.2d 726

*Nitz, Walton & Heaton,* Las Vegas, for Appellant.

*Deaner, Deaner, Scann, Curtas & Malan,* Las Vegas; *Steven J. Mack,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

Chip Parker, a salesman and independent contractor for appellant, Tri-Pacific Commercial Brokerage, Inc. (Tri-Pacific), obtained a $60,000 personal loan from respondent Voss Boreta.

The terms of the note stated that the principal would be repaid within four days with an additional $15,000 fee. Chip told Voss that Tri-Pacific would guarantee the loan. Chip signed the promissory note with the printed words "Chip Parker, TriPacific" below his signature. Chip defaulted and Voss sought payment first from Chip and then from Tri-Pacific. Chip's brother, Dan Parker, is the exclusive owner, office holder, and director of Tri-Pacific, and he maintained that he had no knowledge that Tri-Pacific was the alleged guarantor of Chip's loan until Voss filed the lawsuit at issue.

The district court found that the promissory note satisfied the statute of frauds and that Chip had apparent authority to bind Tri-Pacific as guarantor of the loan. The district court then ordered Tri-Pacific to pay Voss the $75,000 owed on the loan, plus interest, attorney fees, and costs as provided for in the promissory note. We conclude that the district court erred in finding Tri-Pacific liable because the promissory note was unenforceable as a guarantee agreement pursuant to the statute of frauds.

## FACTS

Voss and his son, Ron Boreta, own retail stores as majority stockholders in the publicly traded St. Andrews Golf Corporation d/b/a Las Vegas Discount Golf and Tennis (St. Andrews). Tri-Pacific, a California corporation, is a commercial real estate company that specializes in leasing spaces to retailers in shopping centers. In 1990, Tri-Pacific solicited St. Andrews about finding commercial locations for the expansion of St. Andrews' stores in California, and eventually nationwide. Tri-Pacific and St. Andrews subsequently entered into a business relationship.

In early 1992, Ron lent $35,000 to Chip for a personal venture unrelated to Tri-Pacific's real estate business. Chip signed this note without any reference to Tri-Pacific; Chip paid Ron $45,000 approximately one month later. Then, in March of 1992, Chip asked Ron to lend him another $60,000 for the same personal business venture, offering to pay Ron $75,000 within four days. Ron declined, but Voss agreed to loan Chip the money on March 12, 1992, on the same terms discussed with Ron.

Voss testified that he agreed to loan Chip the money even though Voss knew that the money was to be used by Chip individually, and not by Tri-Pacific. Voss told Chip that he wanted some collateral for the loan; Chip replied that he had no personal collateral but stated that Tri-Pacific would guarantee the loan. Chip signed the note with the words "Chip Parker, Tri-Pacific" beneath his signature, and Voss signed below. The note contained language that "the undersigned jointly and severally" agreed to pay the debt owed to Voss.

Chip defaulted on the $75,000 loan. On August 9, 1993, the district court entered a default judgment against Chip, individually, in favor of Voss for $75,000 plus interest, costs, and attorney fees. However, Chip did not satisfy the judgment on the $75,000 note, and on February 6, 1995, the trial between Voss and Tri-Pacific commenced, with Voss claiming that Tri-Pacific was liable on the $75,000 judgment as a guarantor. At trial, Voss maintained that the alleged guaranty agreement was valid and enforceable against Tri-Pacific because the writing satisfied the statute of frauds (pursuant to NRS 111.220), and because Chip had apparent authority to bind Tri-Pacific as a guarantor of the note.

With regard to the March 12, 1992, $75,000 time note, the district court found that the writing satisfied the statute of frauds. The court also found that Chip and Tri-Pacific were jointly and severally liable on the obligation, pursuant to the language in the note. Subsequently, the lower court entered judgment in favor of Voss, ordering Tri-Pacific to pay the $75,000 note signed by Chip, in addition to interest, costs, and attorney fees.

Tri-Pacific appeals the district court's "Findings of Fact and Conclusions of Law" and subsequent judgment. Tri-Pacific asserts that Chip did not have apparent authority to bind Tri-Pacific as a guarantor of the loan, that the law required express authority to bind a principal on a guaranty, and that the writing was not sufficient to satisfy the statute of frauds and was thus unenforceable.

We conclude that the note was unenforceable against the alleged guarantor pursuant to the statute of frauds and, therefore, we do not need to address the other issues raised on appeal.

## DISCUSSION

*The note was not enforceable pursuant to the writing requirements of the statute of frauds*

"Under . . . Nevada law, contracts of guarantee are subject to the statute of frauds." Pentax Corp. v. Boyd, 111 Nev. 1296, 1299, 904 P.2d 1024, 1026 (1995). The district court concluded that the $75,000 promissory note satisfied the statute of frauds requirements, delineated in NRS 111.220.[1] We disagree. In

---

[1]NRS 111.220 states, in pertinent part, that:

> In the following cases every agreement is void, unless the agreement, or some note or memorandum thereof expressing the consideration, is in writing, and subscribed by the person charged therewith:
>
> . . . .
>
> 2. Every special promise to answer for the debt, default or miscarriage of another.

reviewing the writing at issue, we note that the loan instrument states that "the undersigned jointly and severally promise to pay" the agreed amount. However the note contains only two signature lines; the top line is signed by Chip, with the printed words "Chip Parker, Tri Pacific," and the signature line below shows the signature of Voss Boreta with the printed words "Voss Boreta." We conclude that the note, as written, was fully enforceable against Chip, individually, but did not constitute an enforceable contract between Voss and Tri-Pacific.

Pursuant to NRS 111.220, the substantial parts of the contract must be embodied in writing with such a degree of certainty so as to make clear and definite the intention of the parties without resorting to oral evidence. *Stanley v. Levy & Zentner Co.*, 60 Nev. 432, 446, 112 P.2d 1047, 1053 (1941). The *Stanley* court quoted Restatement of Contracts § 207 (1932), in noting that " 'the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made' " must be stated in the writing with certainty. *Id.*

We conclude that the promissory note at issue lacks any words indicative of a guaranty agreement between the parties. *Cf.* Glen Falls Ins. v. First Nat'l Bank, 83 Nev. 196, 200, 427 P.2d 1, 3 (1967) ("The original contract of the principal is not [the guarantor's] contract."). We further conclude that the "jointly and severally" language is irrelevant, as the "undersigned" consisted of Chip and Voss. The only reference to Tri-Pacific was in a single typed signature line, "Chip Parker, Tri Pacific," above which Chip signed his name without any indication that he was separately signing on Tri-Pacific's behalf. The document is simply not a clear and definite indication that the parties' intent was to have the personal debt of Chip guaranteed by Tri-Pacific. As other jurisdictions have noted, "A guarantor is the favorite of the law," and as such, a writing deficient in essential elements is void and unenforceable. Kutilek v. Union Nat'l Bank of Wichita, 516 P.2d 979, 984 (Kan. 1973).

## CONCLUSION

We conclude that the promissory note at issue was unenforceable against Tri-Pacific under the statute of frauds. Therefore, Tri-Pacific was not liable on the $75,000 instrument, and accordingly, we reverse the district court's judgment.[2]

---

[2]THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this matter.